

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50287 | **DATE** | 6/5/2001 |
| **CASE TITLE** | Huizenga vs. Elkay Manufacturing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated on the attached Memorandum Opinion and Order, defendant's motion for summary judgment is granted. This case is hereby dismissed in its entirety with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| X | Notices mailed by judge's staff. | | | JUN - 5 2001 | | 34 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| X | Mail AO 450 form. | | | docketing deputy initials | | |
| X | Copy to judge/magistrate judge. | | | 6-5-01 | | |
| /LC | courtroom deputy's initials | | 2001 JUN -5 PM 4:00 U.S. DISTRICT COURT CLERK | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |



SAMUEL L. HUIZENGA,                  )
                                     )
            Plaintiff,               )
                                     )
     v.                              )   No. 99 C 50287
                                     )
ELKAY MANUFACTURING                  )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff, Samuel L. Huizenga, originally filed this single-count complaint in an Illinois state court against defendant, Elkay Manufacturing ("Elkay"), claiming Elkay terminated and failed to reasonably accommodate him because of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Elkay properly removed the case to this court on the basis of federal question jurisdiction. See 28 U.S.C. §§ 1441(a), 1331. Venue is proper as the alleged unemployment practices took place in this district and division. See 42 U.S.C. §§ 12117(a), 2000e-5(f)(3). Before the court is Elkay's motion for summary judgment filed under Federal Rule of Civil Procedure 56.

## II. <u>BACKGROUND</u>

Since 1985 until the present, Huizenga has been receiving treatment at the Veterans Administration Medical Center in Iowa City, Iowa ("the VA") for an "anxiety disorder with panic attacks." (LR 56.1(a) ¶ 25) Throughout his employment as a laborer and machine operator at Elkay, which lasted from February 5, 1990, until his termination on June 22, 1993, part of Huizenga's treatment required him to visit the VA approximately once every three months to monitor his medication. (<u>Id.</u> ¶¶ 3, 17, 21, 39, 40) Because the distance between the VA and Huizenga's home in Illinois was a two-hour drive each way, Huizenga would take a day off from work to attend his quarterly appointments. (<u>Id.</u> ¶ 41) Each time Huizenga did so, Elkay counted the absence as unexcused for purposes of its attendance policy. (<u>Id.</u> ¶¶ 48-56, 60)

The "absence and tardiness policy" in effect when Huizenga worked at Elkay was based on a system of progressive and regressive disciplinary action. Under this policy, an employee received an "incident" for an unexcused absence of more than one hour. (<u>Id.</u> ¶ 13) An unexcused absence of less than one hour, such as being tardy, leaving early, or leaving during the workday, counted as one-half of an "incident." (<u>Id.</u>) Certain types of absences, including earned vacation time, holidays,

-2-

absences due to a work-related injury or illness, and company-authorized leaves of absence, were considered "excused absences" and accordingly not treated as "incidents." (Id. ¶ 14) The accumulation of four "incidents" within any rolling three-month period resulted in a verbal warning – the first step of progressive discipline. (Id. ¶ 15) Another four "incidents" in the three months following a disciplinary action led to more severe discipline: a written warning, then a one-day disciplinary layoff, and then, ultimately, termination. (Id.) Employees could also purge themselves of prior disciplinary actions in reverse order. Under Elkay's policy, an employee with less than four "incidents" in the three months following his most recent disciplinary action could eliminate that disciplinary action; another three months with less than four "incidents" would eliminate the previous disciplinary action, and so on. (Id. ¶ 16)

In his nearly three and one-half years at Elkay, Huizenga climbed up and down the disciplinary ladder numerous times. In fact, he received a total of ten disciplinary actions, accounting for forty unexcused absences (but not accounting for other unexcused absences which did not result in disciplinary action and not including some sixty-seven other excused absences for work-related injuries). (Id. ¶¶ 48-56, 60; LR 56.1(b) Reply ¶

172) According to Huizenga, though, at least one (and sometimes two) of the four "incidents" giving rise to each of his disciplinary actions represented a trip to the VA to treat his anxiety disorder. (LR 56.1(a) ¶¶ 48-56, 60) He told this fact to Elkay's human resources manager, Phyllis Roth, during his disciplinary sessions and requested that these absences not be counted against him as "incidents." (LR 56.1(b) ¶¶ 167, 175, 179) Huizenga made similar pleas to other Elkay personnel, including his immediate supervisor, Leona Daws, and Roth's predecessor, William Shearer, and claims Shearer actually granted his request to not count his quarterly appointments as "incidents" shortly after Huizenga started working at Elkay in February 1990. (Id. ¶¶ 164, 169-70, 183) All of Huizenga's efforts were for naught, however, as Elkay did treat his visits to the VA as "incidents" and eventually terminated him on June 22, 1993, under the attendance policy for excessive absenteeism. (LR 56.1(a) ¶ 60)

## III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a

-4-

matter of law." Fed. R. Civ. P. 56; <u>Sinkler v. Midwest Prop.</u>
<u>Mgmt. Ltd. P'ship</u>, 209 F.3d 678, 682-83 (7th Cir. 2000). To
determine whether a genuine issue of material fact exists, the
court views the evidence and draws all reasonable inferences in
the light most favorable to the nonmoving party. <u>See</u> <u>Sinkler</u>,
209 F.3d at 683. A genuine issue for trial exists only when a
reasonable jury could find for the nonmoving party based on the
record as a whole. <u>See</u> <u>id.</u>

Under the ADA, there are two distinct categories of
disability discrimination claims: failure to accommodate and
disparate treatment. <u>See</u> <u>Basith v. Cook County</u>, 241 F.3d 919,
927 (7th Cir. 2001). Huizenga appears to allege both of these in
his complaint, but has effectively abandoned his disparate
treatment claim by focusing solely on the issue of reasonable
accommodation in his response brief. This makes good sense
because his basic theory of the case is that Elkay should have
reasonably accommodated his anxiety disorder by not counting his
quarterly visits to the VA as unexcused absences. "But for"
Elkay's failure to provide this accommodation, Huizenga argues,
he would not have exceeded the limit of four "incidents" within a
three-month period and, consequently, would not have received any

discipline or been terminated under the attendance policy.[1]

Regardless of which type of claim he pursues, Huizenga's threshold burden is to establish that he is disabled within the meaning of the ADA. See Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir. 2000). The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Although Huizenga has invoked all three definitions to show he is disabled, the court finds he has not met his burden of presenting sufficient evidence of a disability under any one of them.[2]

---

[1] Elkay is correct to point out that the only disciplinary actions properly before the court are those involving "incidents" that occurred after July 26, 1992, which is the effective date of the ADA. See 42 U.S.C. § 12111 (Effective Date note). Because the ADA is not retroactive, Huizenga must show he was the victim of disability discrimination on or after the ADA's effective date. See Huels v. Exxon Coal USA, Inc., 121 F.3d 1047, 1049 (7th Cir. 1997). Thus, the scope of Huizenga's failure to accommodate claim is necessarily limited to the following three disciplinary actions: one on October 27, 1992 (one "incident" for a VA appointment on October 2), another on April 12, 1993 (two "incidents" for VA appointments on January 15 and April 5), and the final one on June 22, 1993 (one "incident" for a VA appointment on April 30). (LR 56.1(a) ¶¶ 55, 56, 60)

[2] This makes it unnecessary to address Elkay's remaining arguments for granting its motion for summary judgment. One of these, however, is worth mentioning. Elkay argues Huizenga's alleged disability did not cause his termination because the four absences per year he needed to attend his VA appointments would not by themselves have been sufficient under Elkay's attendance

## A. **Actual Disability**

Huizenga's primary contention for proving he is disabled is that his anxiety disorder is an actual disability under subsection (A). This requires Huizenga to identify which particular major life activities are affected by his anxiety disorder and to show how it substantially limited those activities. See Sinkler, 209 F.3d at 683; Krocka v. City of Chicago, 203 F.3d 507, 512-13 (7th Cir. 2000). To be "substantially limited" means Huizenga "is either unable to perform, or significantly restricted as to the condition, manner, or duration under which [he] can perform, a major life activity

---

policy to trigger any discipline. Rather, it was all the other, non-VA-related unexcused absences Huizenga racked up over the years that led to his disciplinary actions and eventual discharge. Though not a slam dunk, this argument has some support in the case law. See Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032-33 (7th Cir. 1999) (holding that final element plaintiff must show in prima facie case of reasonable accommodation claim is that disability caused the adverse employment action, meaning that it was a "substantial" or "significant" factor); Palmer v. Circuit Court of Cook County, Ill., 117 F.3d 351, 352 (7th Cir. 1997), cert. denied, 522 U.S. 1096 (1998) (holding that employee who was fired for threatening to kill another employee was not fired "because of her mental illness" even though her behavior was precipitated by her mental illness).

Perhaps an even more promising approach to this issue, but one Elkay did not take, is to argue Huizenga was not a "qualified individual with a disability" because of his excessive absenteeism. See Waggoner v. Olin Corp., 169 F.3d 481, 484 (7th Cir. 1999) (holding that employer may terminate employee for erratic, unexplained absences, "even when those absences are a result of a disability").

as compared to an average person in the general population."
<u>Krocka</u>, 203 F.3d at 513 (internal quotations and citations
omitted); <u>Moore</u>, 221 F.3d at 951; 29 C.F.R. § 1630.2(j)(1). In
addition, the court must take into account the ameliorating or
aggravating effects of any corrective devices or mitigating
measures, such as medication, on Huizenga's ability to perform a
major life activity. <u>See</u> <u>Sutton v. United Air Lines, Inc.</u>, 527
U.S. 471, 481 (1999); <u>Krocka</u>, 203 F.3d at 513.

Huizenga is certainly not remiss in pointing out which major
life activities he believes are at issue in this case. In
"everything but the kitchen sink" fashion, he claims his anxiety
disorder caused his hand-eye coordination to be "slow" and
substantially limited his ability to care for himself, perform
manual tasks, breathe, orally communicate, think, reason, learn,
work, sleep, eat, concentrate, remember things, have
interpersonal relationships, and "control impulses to abuse
alcohol and gamble." The first problem with this rather lengthy
laundry list is that the ability to "control impulses to abuse
alcohol and gamble" cannot by any stretch be considered a "major
life activity" as that term is used in the ADA. More
importantly, Huizenga's argument that he is "substantially
limited" in the rest of these major life activities is based on
only the sketchiest and most perfunctory evidence.

In his deposition, Huizenga explained that, during his tenure at Elkay between 1990 and 1993, the frequency and duration of his panic attacks had lessened to the point where he would have approximately four to five attacks per day while at work, with each one lasting approximately ten to fifteen minutes. (LR 56.1(a) ¶ 30) Some of the symptoms he experienced during a panic attack included a lack of hand-eye coordination, so that he could not operate his machine as fast, a shortness of breath, a "hampered" ability to think, and feeling "like a real airhead." (Id. ¶¶ 26-27, 29) Huizenga stated he was able to continue working during a panic attack, albeit at a slower pace. (Id. ¶ 31) In fact, Huizenga specifically testified that his medication enabled him to perform his job. (Id. ¶ 38) He also admitted he was able to care for himself at this time and was able to drive himself to and from work, as well as to and from the VA. (Id. ¶¶ 41-42) Finally, when asked if there were "other ways that [his] panic attacks either at work or outside work affected or limited [his] ability to function in any way," Huizenga's only response was as follows: "They just - it slows you down and also - it's not like you can put a long day in, not - like I used to be able to put a 12-hour, 14-, 16-hour day in. Taking medication and having panic attacks, you can't do that; it just cuts down on your energy." (Def. Exh. A, Huizenga dep., pp. 132-33) (emphasis

added)

Throughout his deposition, Huizenga makes no mention of most of the major life activities he now claims were affected by his anxiety disorder. And even the ones he does raise – working, taking care of himself, and being "slowed down" mentally – were not, by his own admissions, significantly limited by his panic attacks, if at all. Having slower hand-eye coordination and working at a slower pace at ten to fifteen minute intervals, totaling approximately one hour each day, hardly show Huizenga was significantly restricted in "the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Krocka, 203 F.3d at 513 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Similarly, the inability to work a twelve-hour shift due to a loss of energy, without more, does little to prove Huizenga was substantially limited in his ability to work in general, especially when he admitted he was able to work through a full eight- or nine-hour day. (Def. Exh. A, Huizenga dep., p. 133)

Apparently realizing the shortcomings in his deposition testimony, Huizenga has submitted his own supplemental affidavit, as well as the affidavit of Rita Parker, a psychotherapist who was Huizenga's case manager at the Sinnissippi Mental Health

Center in Mt. Carroll, Illinois, from June 1998 until July 1999.
Huizenga's affidavit, however, either flatly contradicts or adds
little to his deposition testimony. For example, Huizenga claims
in his affidavit that the medication he takes for his panic
attacks makes him "very tired all the time" but he still "can't
sleep for more than a couple hours at a time." (Pl. Exh. C,
Huizenga Aff. ¶ 28) Compare this to what Huizenga said at his
deposition: "[The medication] helps - when you get to sleep, it
keeps you to sleep so you get a good night's sleep." (Def. Exh.
A, Huizenga Dep., pp. 6-7) As Huizenga has provided no
explanation for why his affidavit directly contradicts his
deposition, this part of his affidavit will be disregarded. <u>See</u>
<u>Amadio v. Ford Motor Co.</u>, 238 F.3d 919, 926 (7th Cir. 2001).

Huizenga also offers the conclusory remark in his affidavit
that his "mental impairments interfere with [his] ability to
think, reason, analyze, remember things, and orally communicate."
(Pl Exh. C, Huizenga Aff. ¶ 28) He describes his "mental
process" as "slow" and his "hand-to-eye coordination" as "very
slow." (<u>Id.</u>) He admits he can dress and feed himself without
help, but says these tasks take him "a lot longer." (<u>Id.</u>)
Huizenga also states he "get[s] confused easily," he cannot
express himself to others, and his "speech is sometimes not
coherent." (<u>Id.</u>) But because all of these comments are so vague

and general, they provide little insight into the degree of limitation Huizenga's anxiety disorder imposed upon the "condition, manner, or duration" under which he could perform such major life activities as speaking, learning, or cognitive thinking. A motion for summary judgment requires Huizenga to come up with more than these conclusory statements in a subsequent affidavit, especially when he was asked open-ended questions at his deposition to explain how his panic attacks affected or limited his ability to function "in any way" and failed to offer such information at that time. See Stop-N-Go of Madison, Inc. v. Uno-Ven Co., 184 F.3d 672, 677 (7th Cir. 1999); Brill v. Lante Corp., 119 F.3d 1266, 1274 n.4 (7th Cir. 1997).

Rita Parker's affidavit is equally ineffective for similar reasons. To begin, Parker had nothing to do with Huizenga's treatment until June 1998, when she recommended he be admitted for inpatient hospitalization due to "severe anxiety disorder, depression, and suicidal indications." (Pl. Exh. B, Parker Aff. ¶ 3) Based on her observations of Huizenga during 1998 and 1999, she concluded he suffered from a "chronic personality disorder (NOS)[3] which causes significant impairment to his ability to function in daily life activities and interaction with others." (Id. ¶ 5) She says she has also reviewed some of Huizenga's

---

[3] It is unclear exactly what "NOS" is an abbreviation of.

medical and psychological records from the VA since 1988.  From

these she has formed the opinion, "to a reasonable degree of

psychological certainty," that Huizenga

> suffered from a chronic mental impairment for at least
> 10 years, and a personality disorder (NOS), which
> substantially limited one or more of his major life
> activities, such as sleeping, eating, caring for
> himself, inability to control impulses to abuse alcohol
> and gambling, thinking, reasoning, concentration,
> maintain interpersonal relationship, and communication.

(Id. ¶ 8)  Parker goes on to list some more "daily life

activities" Huizenga is substantially limited from performing, as

well as a "broad range of tasks in both the work and non-work

environments."  (Id. ¶ 9)

As with Huizenga's affidavit, Parker's affidavit is "simply

too conclusory and uninformative to be given any weight."  Weigel

v. Target Stores, 122 F.3d 461, 469 (7th Cir. 1997).  Parker

offers no further explanation for the bare assertions that

Huizenga was substantially limited in the various major life

activities identified in her affidavit when he worked for Elkay.

Her "opinions" about the effect of Huizenga's mental impairments

some seven years earlier are nothing more than "theoretical

speculations" and "naked conclusions about the ultimate issue" of

whether Huizenga was substantially limited at that time.  Id.

(internal quotations and citations omitted).  What is worse, some

of Parker's "opinions" directly contradict the reality of

Huizenga's situation between 1990 and 1993. For example, she suggests that in 1993 Huizenga "would have needed some accommodation for his mental impairments to enable him to be employed in an unskilled labor type job performing simple, repetitive manual tasks . . . ." (Pl. Exh. B, Parker Aff. ¶ 10) But Huizenga himself admitted he was fully capable of performing his job as a "precooler operator." Even Huizenga's own treating physicians reported *at the time Huizenga worked at Elkay in 1990 and 1991* that Huizenga would be "able to work without difficulty" and his "course of treatment should cause him no problems with his employment." (Def. Exhs. 4, 5) The truth of the matter is that Huizenga was able to do his job; the only accommodation Huizenga requested, and the only one at issue in this case, is to have four absences per year to attend his VA appointments not counted as "incidents."

To demonstrate his anxiety disorder substantially limited his ability to perform a major life activity between 1990 and 1993, Huizenga must do more than merely provide evidence of his own limitations at that time; instead, he has the burden to present sufficient "comparator evidence" to show he is "significantly restricted" as compared to the "average person in the general population." See 29 C.F.R. § 1630.2(j)(1)(ii); Maynard v. Pneumatic Prods. Corp., 233 F.3d 1344, 1348-49 (11th

Cir. 2000).  Cf. Contreras v. Suncast Corp., 237 F.3d 756, 763

n.5 (7th Cir. 2001) (plaintiff cannot establish he was

substantially limited in major life activity of working by

pointing to no evidence other than his own lifting restrictions);

Skorup v. Modern Door Corp., 153 F.3d 512, 515 (7th Cir. 1998)

(with regard to major life activity of working, plaintiff must

provide "at least some evidence" from which court can determine

"general guideposts" as to whether impairment foreclosed her from

accepting a few, many, or most jobs in a particular class or a

broad range of classes).  If Huizenga does not produce such

"comparator evidence," he must, at the least, provide enough

specifics about his disability so the fact finder is not left

speculating about how substantial his limitations really are

compared to the "average person."  In Davidson v. Midelfort

Clinic, Ltd., 133 F.3d 499 (7th Cir. 1998), for example, the

plaintiff attempted to show she had a "record of" attention

deficit disorder.  Although she did not make an effort to

demonstrate that her learning difficulty was more significant

than the limitations an average student might experience, she did

identify ways in which her learning-related limitations

manifested themselves "with enough specificity that one [could]

reasonably infer that her burdens were distinct from that of the

average student."  Id. at 510.  The plaintiff testified that,

during her secondary and post-secondary education, she had to dictate her class notes and then write them out again by hand, and had to write out passages she had just read in a textbook. These were obstacles the court "[did] not imagine" the average person in the general population had to face.  Id.  Consequently, it found this evidence would allow a reasonable fact finder to conclude the plaintiff had a history of an impairment substantially limiting her ability to learn.

Huizenga has not come close to this level of specificity, let alone provided any sort of "comparator evidence."  Huizenga suggests in his brief that his "mental and physical processes are very slow as compared to the average person" (Pl. Resp., p. 9), but this statement is belied by the record, which contains absolutely no evidence comparing Huizenga's limitations at the time he worked for Elkay to those of "the average person in the general population."  In addition, as already discussed, Parker's affidavit and portions of Huizenga's affidavit barely go beyond the language of the ADA, saying little more than, "Huizenga is substantially limited in the major life activities of . . . ."  As such, this evidence does not provide "specific facts; it is merely conclusory, restating the requirements of the law."  Moore, 221 F.3d at 952 (internal quotations and citations omitted).  The minimum detail Huizenga does offer in his

affidavit and deposition testimony is just as unhelpful because he provides no benchmark from which to evaluate the degree of his limitations. He says that, because of his anxiety disorder, his thought process is "slow" and "hampered," his hand-to-eye coordination is "very slow," his speech is incoherent "sometimes," it takes him "a lot longer" to feed himself, and he had to work at a slower pace. Unlike the specific anecdotal evidence used in <u>Davidson</u>, these descriptions are simply too generic for a reasonable jury to conclude Huizenga was significantly restricted in his ability to perform a major life activity as compared to the average person.

## B. "Record of Impairment"

Although raised in his brief, Huizenga has done little to advance the argument that he had a "record of" a disability. At most, he has pointed out some early treatment records from the VA, which, according to him, "clearly show his history and record of mental illness." (Pl. Resp., p. 11) Even assuming Elkay knew of these records when it hired him,[4] <u>see Davidson</u>, 133 F.3d at

---

[4] Elkay says it possessed only three records containing information about Huizenga's anxiety disorder: a pre-employment physical exam questionnaire and letters from two of Huizenga's treating physicians. (LR 56.1(b) Reply ¶ 164; Def. Exhs. 3, 4, 5) It steadfastly denies any of the VA medical records Huizenga attached to his affidavit were in his personnel file. (Pl. Exh. C., Bates Nos. D0293, D0394-398; LR 56.1(b) Reply ¶ 164). At the same time, though, Elkay also does not dispute Huizenga signed a

-17-

510 n.8 (noting that a "record of impairment" claim requires proof that employer be aware of the record in question), the fallacy in Huizenga's logic is that a record of his mental impairment is not enough by itself to prove his claim. "What § 12102(2)(B) requires is not simply a diagnosis, but a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities." Id. at 510 n.7. It is true the VA medical records refer to Huizenga's anxiety disorder and some of his initial symptoms, but Huizenga has not identified anything in those records (and the court found nothing in its own review) indicating he was substantially limited in a major life activity. In fact, as noted above, some of the records suggest just the opposite by stating that Huizenga's panic disorder and his medications would have no effect on his ability to work. (Def. Exhs. 4, 5) As a result, the court finds Huizenga has presented insufficient evidence to prove his "record of impairment" claim.

## C. "Regarded as having an impairment"

medical release form at Shearer's request on February 13, 1990, to have the VA release Huizenga's medical records to Elkay. Huizenga says Shearer later told him he received the requested records – a fact which Elkay similarly leaves undisputed. (LR 56.1(b) Reply ¶ 166) Huizenga does not specify which records Shearer allegedly received, but, giving him the benefit of the doubt for purposes of this motion, the court will assume Elkay possessed the VA medical records.

Much of what has been said about Huizenga's "record of impairment" claim is also true of his "regarded as" claim. Huizenga says he told various people at Elkay, including two different human resources managers, a human resources assistant, and his direct supervisor, about his anxiety disorder. He also claims it was "common knowledge" at Elkay that he suffered from panic attacks and was "slower mentally than normal." Once again, though, even assuming all of this to be true, it is not enough for Huizenga to show Elkay was aware of his impairment; instead, he must show Elkay knew of the impairment and mistakenly believed it was substantially more limiting than it truly was. See Sutton, 527 U.S. at 489; Krocka, 203 F.3d at 514. Huizenga, however, has not at all argued Elkay misperceived his anxiety disorder as substantially limiting him in a major life activity. The closest Huizenga comes in this respect is the fact that Shearer had once talked to him about working too slow and that Daws testified Huizenga's medical condition "affect[ed] his work performance." (LR 56.1(b) ¶¶ 103, 162) But neither this evidence nor anything else in the record suggests Elkay considered Huizenga unable to perform his job, let alone limited in his ability to work in general. See Skorup, 153 F.3d at 516;

<u>Davidson</u>, 133 F.3d at 510.[5]

## IV.  CONCLUSION

For the reasons stated above, the court finds Huizenga has presented insufficient evidence from which a reasonable jury could find he is disabled under the ADA.  Elkay's motion for summary judgment is therefore granted and this case is hereby dismissed in its entirety with prejudice.

**E N T E R:**

_Philip G. Reinhard_

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED:  _June 5, 2001_

---

[5]    Another problem with Huizenga's "regarded as" claim is that some courts have held plaintiffs who fall under this category of disability are not entitled to reasonable accommodations under 42 U.S.C. § 12112(b)(5)(A).  <u>See</u>, <u>e.g.</u>, <u>Weber v. Strippit, Inc.</u>, 186 F.3d 907, 917 (8th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1078 (2000); <u>Ross v. Matthews Employment</u>, No. 00 C 1420, 2000 WL 1644584, at *5 (N.D. Ill. Oct. 27, 2000).  As Huizenga has dropped his disparate treatment claim by pursuing only the reasonable accommodation claim, a finding that Elkay regarded Huizenga as disabled would mean little as he would have no theory available to prove discrimination based on a perceived disability.

# United States District Court
## Northern District of Illinois
### Western Division



Samuel L. Huizenga

v.

Elkay Manufacturing

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 50287

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted. This case is hereby dismissed in its entirety with prejudice.

FILED-WD
2001 JUN -5 PM 4: 00
CLERK
U. S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 6/5/2001

Susan Wessman, Deputy Clerk